VOLUNTEER, The (ELLIOTT v.). See Case No. 4,398.

---

## Case No. 16,992.

### The VOLUSIA.

[3 Wall. Jr. 375; 19 Hunt, Mer. Mag. 80.] [1]

Circuit Court, E. D. Pennsylvania. Sept. Term, 1862. [2]

RIGHTS OF WHARF OWNERS AT PHILADELPHIA.

In Philadelphia the owners of wharves have a right to use them for the unlading of their own vessels to the exclusion of others.

[Appeal in admiralty from the district court of the United States for the Eastern district of Pennsylvania.]

Lincoln & Co. were the lessees of a wharf on the Delaware, below Chestnut street, and proprietors of a line of Boston packets, that loaded and unloaded there. On a Saturday afternoon, 1847, one of their packets lying at the wharf, was covered by the Volusia, which lay alongside of her on the outside berth. The Volusia. with a cargo of fruit, had just arrived from Palermo. The Sulla, another of the line of packets, lay astern of, and at right angles with the packet at the wharf; with her head in. As the packet at the wharf was ready to sail, she swung out, stern foremost, and thus made a wedge-shaped vacancy between herself

---

[1] [Reported by John William Wallace, Jr., Esq., and here reprinted by permission. 19 Hunt, Mer. Mag. 80, contains only a partial report.]

[2] [Reversing Case No. 8,357.]

and the wharf, which presented an opening into which the Sulla was warped, and made fast to the wharf. As the departing packet swung out, she crowded the Volusia, of course, further from the place where she wanted to be, and effectually prevented her from occupying the inside berth, to cover and secure which she had placed herself at the outside berth. The harbor-master's aid was invoked by the consignee of the Volusia, who ordered the Sulla to give the wharf-place to the Volusia. Lincoln & Co. ordered the captain of the Sulla to retain his place. The harbor-master sued the captain of the Sulla before an alderman for disobeying his orders, and the alderman fined him $25. On the fine being imposed, the Sulla left the wharf, and the harbor-master ordered the Volusia to take it, which she did. Lincoln & Co. then gave notice to the consignee of the Volusia, that their charge for wharfage was $10 per day, which was $8 per day more than the ordinary rate. Payment at this rate being refused, they libelled the Volusia.

It was urged that by the custom of the port, the occupation of an outside berth covers the inside, and that the Volusia acted under the orders of the executive officer of the port, whose directions are obligations. It was answered by the libellants that such a usage, if proved to exist (which was denied), was contrary to reason, and therefore should be abolished; that a merchant might insist upon the use of the inside berth, as essential to the exclusive dominion of his property, while, if to protect it, he was obliged to keep off.vessels occupying the outside berth. he would be making his own wrongful act, and one prejudicial to commerce, his justification; and that he could not, for that reason, be presumed to assent to the principle of such an usage, or to yield his acquiescence to the notion that because he did not order off the outside vessel, he thereby surrendered his rights to his own wharf inside; and that the orders of the harbor-master were like the orders of any other officer, obligations so far, and no farther than they were lawful commands.

The matter having been argued before the district court, that court announced the following as its conclusions: 1st. If a berth at any of the wharves be for the time occupied by a vessel, in which the owner or possessor of the wharf has an immediate interest, whether such a vessel be loading, discharging, or empty, no other vessel can claim a right to occupy that berth. 2d. If an adequate berth be vacant at any wharf it may be occupied at once with the owner's consent. otherwise the master or agent of the vessel must apply to the owner or possessor of the wharf for permission to occupy it, and if within twenty-four hours after such application the vacant berth is not filled by some vessel in which the owner or possessor of the wharf has an immediate interest, it may then be lawfully occupied for such time as the despatch of business may require, by the vessel for which the application

was made. 3d. A vessel arriving from sea and desirous of discharging her cargo, may claim the inner berth at the wharf for a reasonable time, not exceeding six days, and may require vessels that are empty, or receiving freight, to take for the time the outer berth, unless between the 10th December and 1st March. 4th. The custom of the port gives a right to a vessel which has legally occupied an outer berth, to claim the next inner berth which she covers, whenever it has become vacant. 5th. The wardens of the port, represented by the master wardens and the harbor-masters, are the officers entrusted with the interpretation, application and enforcement of the legal and customary regulations of the port.

The district court, therefore (KANE, District Judge), dismissed the libel, ordering, however, the respondents to pay wharfage according to the accustomed rates; to wit: $2 a day. [Case No. 8,357.]

Mr. Waln. for libellants.
H. M. Phillips, contra.

After advisement, GRIER, Circuit Justice, for the circuit court. reversed the decree, announcing the rule of this port to be, that no vessel has a right to occupy a wharf without the permission of the owner, unless twenty-four hours' previous notice has been given of an intention to·occupy a wharf, which was vacant when the notice was made.